**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO.: 3:26-cv-1020**

JESSICA RAPE,

Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant.
________________________________/

## COMPLAINT

Plaintiff Jessica Rape ("Plaintiff"), by and through the undersigned counsel, sues Defendant State Farm Fire and Casualty Company ("State Farm" or "Defendant") and alleges as follows:

## PARTIES

1. Plaintiff is a natural person domiciled in Union County, North Carolina, and is a citizen of the State of North Carolina.

2. State Farm is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois; it is therefore a citizen of Illinois, and it is not a citizen of North Carolina. 28 U.S.C. § 1332(c)(1). At all times relevant hereto, State Farm was authorized to transact, and did transact, the business of insurance in North Carolina.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. The amount in controversy is built as follows. State Farm has withheld $43,767.82 in policy benefits owed for the loss described below. That withheld benefit is the actual injury proximately caused by the unfair and deceptive acts alleged in Count II, and N.C. Gen. Stat. § 75-16 requires that it be trebled, which places $131,303.46 in controversy before interest, costs, or attorneys' fees are considered.

5. Venue is proper in the Western District of North Carolina, Charlotte Division, under 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claims occurred, and the insured property is situated, in Union County, North Carolina.

6. North Carolina law governs the Policy described below, which insures property located in North Carolina. N.C. Gen. Stat. § 58-3-1.

## GENERAL ALLEGATIONS

### A. The Property and the Policy

7. At all times relevant hereto, Plaintiff owned the real property and residence located at 4112 Mullis Newsome Road, Monroe, North Carolina 28110 (the "Property").

8. In consideration of premiums paid by Plaintiff, State Farm issued to Plaintiff a Homeowners Special Form policy of insurance, Policy No. 33-C3-Y212-6, on policy forms FP-7143.5 and FE-2259.2, insuring the Property for the policy period June 19, 2025 to June 19, 2026 (the "Policy"). The Policy provides a Coverage A (Dwelling) limit of $274,700 and a Section I all-perils deductible of $1,000. A true and correct copy of the Policy is incorporated herein by reference.

9. The Policy's Coverage A is written on an open-peril basis. As State Farm has itself quoted the insuring agreement to Plaintiff, the Policy provides: "We insure against direct physical loss to property described in Coverages A and B."

10. State Farm renewed the Policy for the June 19, 2025 to June 19, 2026 period by a renewal certificate prepared April 30, 2025. The renewal neither excluded nor limited coverage for the

roof of the Property, and among the premium reductions State Farm applied on renewal was a "Claim Record Discount."

11. The Policy's North Carolina special provisions, form FE-2259.2, provide: "No action can be brought against us unless there has been full compliance with all of the terms under Section I of this Policy and the action is started within three years after the date of loss."

**B. The Loss**

12. On June 25, 2025, severe thunderstorms producing hail and damaging wind gusts moved across Union County, North Carolina. The National Oceanic and Atmospheric Administration's Storm Events Database records a hail event of 0.75 inch in Union County at 5:40 p.m. that day, during an episode in which "[i]solated storms became severe and produced hail and brief damaging wind gusts."

13. The storm caused direct physical loss to the Property, including damage to the roof covering, to the vinyl siding on more than one elevation, and to the window screens, window wraps and frames, gutters, downspouts, and garage door, together with water damage to the interior of the dwelling.

14. Plaintiff timely reported the loss to State Farm, which assigned it Claim No. 33-99R2-25J (the "Claim"), and Plaintiff made the Property available to State Farm for inspection.

**C. State Farm Denies the Claim**

15. By letter dated May 20, 2026, State Farm denied the Claim in its entirety, stating that "following our investigation, including an inspection at your home, no wind or hail damage has been identified. Therefore, no payment will be issued for this claim at this time." The letter further stated that "[b]ased on our investigation into damages on your roof, we found there are signs of wear, tear or deterioration."

16. The May 20, 2026 letter relied upon Section I exclusion 2.c.(6) of form FP-7143.5, which excludes "(a) Wear and tear, marring, deterioration; (b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself."

17. The May 20, 2026 letter addressed only the roof. It did not mention the vinyl siding or any other exterior component of the dwelling.

18. The May 20, 2026 letter also stated that State Farm had not inspected the interior of the dwelling, explaining: "You advised there was no interior damage to your home as a result of this loss. For this reason we have not inspected the interior."

**D. State Farm's Representations About Its Claim File**

19. Plaintiff retained Paramount Public Adjusting ("Paramount") and the undersigned counsel, and counsel served State Farm with a letter of representation on July 13, 2026. On July 15, 2026, Plaintiff, through counsel, requested State Farm's underwriting file, including any inspection of the Property made in connection with the issuance or renewal of the Policy.

20. On July 28, 2026, State Farm responded that it had "attached all the underwriting documents that are available for claim# 33-99R2-25J for Jessica Rape." The documents produced were a copy of the Policy and a 2017 homeowners application. They contained no record of any inspection of the roof of the Property before the loss.

21. On July 30, 2026, State Farm wrote to Plaintiff's counsel: "At this time, a certified copy of the policy is not warranted and all available documentation has been shared."

22. By letter dated August 18, 2026, Plaintiff, through counsel, requested eight itemized categories of claim documents.

23. On August 19, 2026, State Farm produced a "copy of the policy, first notice of loss, homeowners application, and claim inspection photos," and represented that, "[t]o the best of my knowledge, this constitutes all the disclosable documents that are available at this time."

24. The claim inspection photographs State Farm produced on August 19, 2026 comprise 273 images on 138 pages, none of which State Farm had produced when it represented on July 30, 2026 that "all available documentation has been shared." Each photograph is labeled "Taken: No date available."

25. State Farm's own inspection photographs, bearing location data that places them at the Property, depict holes and crescent-shaped fractures in the vinyl siding on more than one elevation of the dwelling, each photographed against a tape measure.

26. State Farm's production also contains roof photographs bearing the red handwritten notations "F W-0 H-0" and "B W-0 H-0." The location data on those two photographs is 34.868299, -77.548451, a point approximately 164 miles east of the Property. A photograph of the Property's roof appearing on the same page as one of them bears location data placing it at the Property.

27. Nothing State Farm produced records any inspection of the roof of the Property before the loss.

**E. Plaintiff Documents the Loss**

28. Paramount inspected the Property on September 2, 2026 and prepared an estimate, revised September 28, 2026, which identifies the type of loss as "Wind and Hail Damage" and the date of loss as June 25, 2025, and which prices the loss at $49,665.27 replacement cost value, less $2,223.62 in depreciation, for an actual cash value of $47,441.65.

29. On November 1, 2026, Plaintiff, through counsel, submitted to State Farm a written rebuttal of the denial, together with Paramount's revised estimate and supporting photographic documentation, and requested State Farm's response by November 16, 2026.

**F. State Farm's Revised Position and Partial Payment**

30. By letter dated November 9, 2026, State Farm maintained its denial of the exterior loss, stating that "no wind or hail damage has been identified to the roof, siding, or any exterior elevation" and that it had observed "signs of wear, tear, or deterioration to your roof as well has [sic] mechanical damage to the vinyl siding, window screens, window frames, gutters, down spouts, and garage door." The letter again relied upon exclusion 2.c.(6)(a) and (b) and upon the Policy's suit-limitation provision.

31. The November 9, 2026 letter did not identify any mechanism, event, observation, or photograph supporting its attribution of the damage to the siding, window screens, window frames, gutters, downspouts, and garage door to "mechanical damage," and did not explain how any of those components had damaged or destroyed itself.

32. On November 10, 2026, State Farm informed Plaintiff, Paramount, and Plaintiff's counsel by email that "[r]egarding the interior water damage, this damage occurred on a different date of loss from the original claim. As a courtesy to our insured, we will include it with this claim, so they are not assessed a second deductible," and that State Farm would "accept Paramount's Public Adjusting estimate for the interior damages for these rooms." Neither that email nor State Farm's November 20, 2026 response identified the "different date of loss" on which State Farm contends the interior damage occurred.

33. State Farm's accompanying estimate states the type of loss as "Wind Damage" and summarizes the payment under "Coverage A - Dwelling - 35 Windstorm and Hail," at a

replacement cost value of $5,897.45, less the $1,000 deductible, for a net payment of $4,897.45. State Farm issued its check for $4,897.45 under the Claim number, under the coverage description "WIND OR HAIL - BUILDING," and the check states the date of loss as June 25, 2025. Had the interior damage been adjusted as a separate claim, it would have borne the same single $1,000 deductible; the "second deductible" that State Farm's "courtesy" spared Plaintiff could arise only if State Farm also paid the exterior loss, which it denies.

34. State Farm has paid nothing for the damage to the roof, the vinyl siding, or any other exterior component of the dwelling.

**G. Plaintiff's Demand and State Farm's Refusal**

35. On November 10, 2026, Plaintiff, through counsel, demanded that State Farm pay $41,679.58 in actual cash value and confirm $2,088.24 in recoverable depreciation by November 25, 2026, and asked State Farm to identify the facts on which it attributed the exterior damage to "mechanical damage." Plaintiff followed up on November 18, 2026.

36. On November 20, 2026, State Farm's Fire Claims Team Manager responded that "all available coverage has been extended for damages related to the covered perils of wind or hail," that State Farm "subsequently honored your interior repairs as a result of wind driven rain," that "[i]n all documentation provided by our inspectors and your public adjuster, Paramount Public Adjusting, damages to the garage door trim, siding, window wraps, and screens are attributed to mechanical damage," and that, "[f]or these reasons, our stance remains unchanged."

37. None of the estimates or photo sheets Paramount provided to State Farm uses the word "mechanical." Paramount's revised estimate identifies the type of loss as "Wind and Hail Damage."

38. State Farm's November 20, 2026 response did not identify any mechanism, event, observation, or photograph supporting its attribution of the exterior damage to "mechanical damage."

39. The replacement cost value of the covered loss, as documented in Paramount's revised estimate, is $49,665.27. After crediting State Farm's replacement cost payment of $5,897.45 (from which State Farm deducted the Policy's $1,000 deductible), $43,767.82 remains unpaid, consisting of $41,679.58 in actual cash value presently due and $2,088.24 in recoverable depreciation payable under the Policy's loss settlement provisions.

40. All conditions precedent to Plaintiff's recovery under the Policy have been performed, have occurred, or have been waived or excused, and this action is brought within three years after the date of loss.

## <u>COUNT I: BREACH OF CONTRACT</u>

41. Plaintiff realleges and incorporates Paragraphs 1 through 40 as if fully set forth herein.

42. The Policy is a valid and enforceable contract between Plaintiff and State Farm that insures the dwelling at the Property against direct physical loss, including loss caused by wind and hail.

43. The damage to the roof, vinyl siding, window screens, window wraps and frames, gutters, downspouts, and garage door of the Property is direct physical loss caused by the June 25, 2025 storm, and no exclusion in the Policy bars coverage for it.

44. Plaintiff performed all of her obligations under the Policy.

45. State Farm breached the Policy by failing and refusing to pay for the covered loss to the roof, vinyl siding, and other exterior components of the dwelling, and by paying only $4,897.45 of a covered loss whose replacement cost value is $49,665.27.

46. As a direct and proximate result of State Farm's breach, Plaintiff has been damaged in the amount of $43,767.82, consisting of $41,679.58 in actual cash value and $2,088.24 in recoverable depreciation, together with interest from the date of breach under N.C. Gen. Stat. § 24-5(a).

**COUNT II: UNFAIR AND DECEPTIVE TRADE PRACTICES (N.C. GEN. STAT. § 75-1.1)**

47. Plaintiff realleges and incorporates Paragraphs 1 through 40 as if fully set forth herein.

48. State Farm's sale of the Policy and its handling and adjustment of the Claim are acts in or affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1(b).

49. The commission of an unfair claim settlement practice enumerated in N.C. Gen. Stat. § 58-63-15(11) is, as a matter of law, an unfair or deceptive act or practice in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1, and a single such act, proximately causing actual injury, is actionable without any showing that the insurer engaged in the practice with such frequency as to indicate a general business practice. *Pearce v. Am. Defender Life Ins. Co*., 316 N.C. 461, 343 S.E.2d 174 (1986); *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 529 S.E.2d 676 (2000).

50. State Farm violated N.C. Gen. Stat. § 75-1.1 by committing the following practices enumerated in N.C. Gen. Stat. § 58-63-15(11), each of which is an independent basis for this Count:

a. Section 58-63-15(11)(d), refusing to pay the Claim without conducting a reasonable investigation based upon all available information, by denying the roof on the ground of pre-existing wear, tear, and deterioration when State Farm had renewed coverage on that roof, without limitation, for a policy period that began six days before the loss, and has produced no record of any inspection of it before the loss despite representing its production to be all the disclosable documents;

and by refusing to pay for the siding and other exterior components in disregard of its own measured photographs of holes and crescent-shaped fractures in the siding, as alleged in Paragraphs 10, 15 through 17, and 24 through 27;

b. Section 58-63-15(11)(f), not attempting in good faith to effectuate a prompt, fair, and equitable settlement of the Claim as to the vinyl siding, on which liability became reasonably clear no later than August 19, 2026, when State Farm produced its own measured photographs of holes and crescent-shaped fractures in the siding on more than one elevation, and on which State Farm has paid nothing;

c. Section 58-63-15(11)(g), compelling Plaintiff to institute this action to recover amounts due under the Policy by offering substantially less than the amounts she will ultimately recover, in that State Farm paid $4,897.45 on a covered loss whose replacement cost value is $49,665.27 and, after Plaintiff's demand, declared on November 20, 2026 that "our stance remains unchanged," leaving litigation as Plaintiff's only means of recovering the benefits owed; and

d. Section 58-63-15(11)(n), failing to promptly provide a reasonable explanation of the basis in the Policy, in relation to the facts, for its denial, in that State Farm's May 20, 2026 letter did not address the siding or any other exterior component; its November 9, 2026 letter invoked an exclusion for wear and tear and for property that damages or destroys itself against six exterior components without identifying any mechanism, observation, or photograph; and, when Plaintiff asked on November 10, 2026 for the facts behind its "mechanical damage" attribution, its November 20, 2026 response identified none; and, as to the interior, State Farm paid the interior damage under the Claim number and under its windstorm

and hail coverage, by a check stating a June 25, 2025 date of loss, while describing that same payment on November 10, 2026 as a "courtesy" for damage that "occurred on a different date of loss" it did not identify, and on November 20, 2026 as coverage "extended for damages related to the covered perils of wind or hail," without ever reconciling a windstorm and hail payment on the Claim with its position that no wind or hail damage exists to the roof, siding, or any exterior elevation of the dwelling, as alleged in Paragraphs 15 through 17 and 30 through 38.

51. State Farm's conduct was not the product of an honest disagreement or an innocent mistake. It consisted of the refusal to investigate the information in State Farm's own file and the refusal to explain alleged above, maintained after Plaintiff identified each of them in writing, and it was accompanied by statements about the Claim that State Farm's own records contradict. State Farm represented on July 30, 2026 that "all available documentation has been shared" when the 273 inspection photographs it produced on August 19, 2026 had not been shared, as alleged in Paragraphs 21 through 24. State Farm represented on November 20, 2026 that Paramount's documentation attributes the damage to the garage door trim, siding, window wraps, and screens to mechanical damage, when no Paramount estimate or photo sheet says so, as alleged in Paragraphs 36 and 37. And after reviewing photographs of the interior damage, State Farm accepted Paramount's estimate for it, while refusing to pay on Paramount's documentation of the exterior loss and misstating what that documentation says, as alleged in Paragraphs 32 through 37.

52. The actual injury proximately caused by State Farm's violations is the $43,767.82 in policy benefits State Farm has withheld on the roof, the vinyl siding, and the other exterior components.

That injury was caused by the practices alleged in subparagraphs 50(a), (b), and (d): State Farm's refusal to pay those benefits rests entirely on the uninvestigated and unexplained attributions to wear, tear, deterioration, and "mechanical damage" alleged above, so that the unfair conduct is the means by which the benefits were withheld. The practice alleged in subparagraph 50(c) is pleaded as an independent violation, and no additional sum is claimed as injury caused by it.

53. Under N.C. Gen. Stat. § 75-16, Plaintiff is entitled to treble the actual injury proximately caused by State Farm's violations, presently $131,303.46.

54. State Farm willfully engaged in the acts and practices alleged above, and there has been an unwarranted refusal by State Farm to fully resolve the matter that constitutes the basis of this action: after receiving Plaintiff's November 10, 2026 demand and November 18, 2026 follow-up, State Farm refused on November 20, 2026 to pay any part of the exterior loss without identifying a single fact supporting its position. Plaintiff is therefore entitled to an award of reasonable attorneys' fees under N.C. Gen. Stat. § 75-16.1(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jessica Rape respectfully requests that the Court enter judgment against Defendant State Farm Fire and Casualty Company as follows: (a) on Count I, for the benefits due under the Policy, in an amount to be proven at trial and presently calculated at $43,767.82; (b) on Count II, for treble the actual injury proximately caused by Defendant's violations of N.C. Gen. Stat. § 75-1.1, presently calculated at $131,303.46, under N.C. Gen. Stat. § 75-16, with Plaintiff to elect her remedy between Counts I and II to the extent the recoveries overlap; (c) for reasonable attorneys' fees under N.C. Gen. Stat. § 75-16.1; (d) for pre-judgment interest under N.C. Gen. Stat. § 24-5 and post-judgment interest under 28 U.S.C. § 1961; (e) for

the costs of this action; and (f) for such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 21, 2026.

Respectfully submitted,
/s/ Nicholas Ciani
Nicholas Ciani, Esq.
N.C. State Bar No. 63512
Ciani Law, PLLC
1529 NE 17th Terr.
Fort Lauderdale, FL 33304
Telephone: (954) 654-4445
Email: manager@ciani.law
Attorney for Plaintiff